MAŔK TOMCZUK *v.* AMERICAN MUTUAL
INSURANCE COMPANY ET AL.
(4323)

BORDEN, DALY and BIELUCH, Js.

Argued October 15—decision released November 25, 1986

*William F. Gallagher,* with whom, on the brief, were
*William G. Comiskey* and *Evelyn A. Barnum,* for the
appellant (plaintiff).

*James H. Rotondo,* for the appellee (defendant
Meriden Record Company).

BORDEN, J. The principal issue in this appeal is
whether the plaintiff, an employee of the defendant
Meriden Record Company (Record), who was injured
in a car accident in the course of his employment and

awarded a judgment against the driver of the automobile, also an employee of Record, can prevail against Record on a theory of equitable subrogation to rights allegedly possessed by the driver against Record. The trial court, *Higgins, J.*, held that the plaintiff cannot so prevail.[1] We find no error.

The facts fairly provable under the fourth count are as follows: The plaintiff, an employee of Record, was injured in an accident in an automobile driven by another employee, Jaciento Alvarez. The plaintiff sued Alvarez. Record intervened as a plaintiff in that action pursuant to General Statutes § 31-293, and asserted a third-party claim against Alvarez for the $10,000 it had paid to the plaintiff as workers' compensation benefits. Record and Alvarez were both represented by the same attorneys in this prior suit. The attorneys had been retained by Record's insurer, the named defendant, American Mutual Insurance Company (AMIC). The plaintiff alleged that as a result of Record's assertion in the prior suit of the third-party claim against Alvarez, a conflict of interest existed because the same attorneys represented the intervening plaintiff, Record, and the defendant, Alvarez, in the same action. Consequently, the plaintiff alleged, Alvarez was inadequately represented in that action, and thereby obtained a right of equitable subrogation against Record.

---

[1] The trial court, *Higgins, J.*, granted Record's motion to strike the fourth count of the plaintiff's complaint. The first three counts of the complaint were directed at American Mutual Insurance Company (AMIC), the named defendant. The trial court, *Norcott, J.*, later rendered summary judgment in favor of the named defendant on the first three counts and the court, *Flanagan, J.*, rendered judgment in favor of Record on the fourth count. The plaintiff then appealed from the final judgments in favor of both of them. He later withdrew his appeal from the trial court's rendition of summary judgment on the first three counts. The only issue that remains is the propriety of the trial court's granting of Record's motion to strike the fourth count.

The plaintiff further alleged that during the course of the prior litigation, he settled his claim with a codefendant and offered to settle with Alvarez in return for a release of Record's claim for reimbursement of the workers' compensation benefits which it had paid to him. This offer was rejected and, thereafter, the jury returned a verdict resulting in a $150,000 judgment against Alvarez.

The plaintiff brought this suit on the theory that Alvarez is entitled to indemnification from Record for the full amount of the judgment against him because of the conflict of interest arising out of the dual representation by his counsel. The plaintiff claims that since he is a judgment creditor of Alvarez, he is subrogated to Alvarez' right of indemnity against Record.

Record moved to strike the fourth count of the complaint, asserting that it failed to state a claim upon which relief could be granted. The court, *Higgins, J.,* granted Record's motion to strike. Judgment was later rendered for Record on the fourth count. See footnote 1, supra.

"In reviewing the granting of a motion to strike, we take the facts alleged in the complaint and construe them in a manner most favorable to the pleader." *Progressive Casualty Ins. Co.* v. *DiGangi,* 4 Conn. App. 137, 140, 492 A.2d 548 (1985). This includes the facts necessarily implied and fairly provable under the allegations. Id., 140–41. It does not include, however, the legal conclusions or opinions stated in the complaint. *Fairfield Lease Corporation* v. *Romano's Auto Service,* 4 Conn. App. 495, 497, 495 A.2d 286 (1985).

" 'Subrogation is a doctrine which equity borrowed from the civil law and administers so as to secure justice without regard to form or mere technicality.' " *Home Owners' Loan Corporation* v. *Sears, Roebuck & Co.,* 123 Conn. 232, 238, 193 A. 769 (1937). "Subroga-

tion is . . . a remedy which equity gives to aid in the enforcement of a right either legal or equitable . . . ." Id., 241. Under the doctrine of equitable subrogation, "[a] subrogee has no rights against a third person beyond what the subrogor had." *Continental Ins. Co.* v. *Connecticut Natural Gas Corporation,* 5 Conn. App. 53, 60, 497 A.2d 54 (1985). Consequently, the plaintiff, in order to prevail against Record's motion to strike, must have alleged facts which, if true, would support a claim that Alvarez, the putative subrogor, has rights against Record.

The claim of a conflict of interest under the facts alleged in the complaint does not create a basis for indemnification. When an attorney represents two clients with adverse interests, it is the attorney's duty to withdraw from the representation or to disclose the conflict of interest. Code of Professional Responsibility DR 5-105; *Acheson* v. *White,* 195 Conn. 211, 214–15 n.5, 487 A.2d 197 (1985). This disciplinary rule is applicable where counsel is selected by an insurer to represent its insured and others. 16A J. Appleman, Insurance Law and Practice § 8839.35, pp. 109–10. Where, as here, an attorney was retained to represent the insured and the driver of the insured's automobile, it was counsel's duty, if he had reason to believe that discharge of his responsibilities would produce a conflict of interest, to take appropriate steps to terminate the relationship. See *Hammett* v. *McIntyre,* 114 Cal. App. 2d 148, 249 P.2d 885 (1952).

Where dual representation creates a conflict of interest, the aggrieved client may pursue a number of alternatives: the client may move to disqualify the attorney if the litigation has not been completed; or move for a new trial on the ground that he has been denied a fair trial; *Hammett* v. *McIntyre,* supra, 158–59; or bring

a legal malpractice suit against the attorney. J. Appleman, supra, p. 110. The plaintiff's claim, however, would require that one client should suffer at the expense of another client where both were the victims of dual representation by the same attorney. As between Alvarez and Record, there is no legal basis for making Record bear the loss incurred by Alvarez due to their attorney's failure to discharge his duties properly. This is especially so where the plaintiff has not alleged that Record participated in any way in the selection of counsel. On the contrary, the complaint alleged that it was the insurer, AMIC, not Record, which selected counsel.

We conclude, therefore, that Alvarez has no right to indemnification from Record arising from the conflict of interest. Consequently, the plaintiff failed to state a cognizable claim for equitable subrogation and the trial court correctly granted Record's motion to strike.

The plaintiff also raises on appeal the claim that the wrongful act of AMIC with respect to the retention of the same counsel for both Alvarez and Record may be imputed to Record under an agency theory. This claim, however, was raised for the first time on appeal. This court does not ordinarily consider claims unless they were distinctly raised in the trial court or arose subsequent to the trial. See Practice Book § 4185 (formerly § 3063); *Ryan* v. *Mill River Country Club, Inc.,* 8 Conn. App. 1, 5 n.2, 510 A.2d 462 (1986). We therefore decline to review this claim.

There is no error.

In this opinion the other judges concurred.