[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (MOTION TO STRIKE)
The plaintiff, a minor, has filed this action against the defendant, also a minor, alleging that the defendant was negligent and careless when, while playing baseball in a school gym class, the plaintiff was struck in the head with a baseball bat by the defendant. As a result of this incident, the plaintiff alleges he sustained personal injuries.
The defendant has filed a motion to strike the plaintiff's revised complaint dated January 31, 2001, claiming that mere negligence by the defendant is insufficient to permit recovery for an injury sustained in a team sport. The defendant argues that the standard of care for participants in a team contact sport is a legal duty to refrain from reckless or intentional conduct pursuant to Jaworski v. Kiernan,241 Conn. 399, 696 A.2d 332 (1997)
The plaintiff, in opposing the motion to strike, argues that Jaworskiv. Kiernan, supra, 241 Conn. 412, is limited only to those injuries occurring during team athletic contests involving contact as part of the game. The plaintiff contends that, although baseball is a team sport, the plaintiff was not on the playing field when he was injured by the defendant's bat; therefore, he was not actively engaged in the game when he was injured. While some contact is to be anticipated while running the bases on the field, the plaintiff argues that the contact suffered by the defendant was not the type of contact that is to be anticipated when playing baseball.
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). A motion to strike shall be granted if "the CT Page 7370 plaintiff's complaint [does not] sufficiently [state] a cognizable cause of action as a matter of law." Mora v. Aetna Life and Casualty Ins. Co.,13 Conn. App. 208, 211, 535 A.2d 390 (1988)
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings" (Emphasis omitted.) Id. "A motion to strike is properly granted where a plaintiff's complaint alleges legal conclusions unsupported by facts." Id.
"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988). A motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged." (Internal quotation marks and citations omitted.) Alarm Applications Co. v.Simsbury Volunteer Fire Co., 179 Conn. 541-50, 427 A.2d 822 (1980)
Upon deciding a motion to strike, the trial court must construe the "plaintiff's complaint in [a] manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465, 471,594 A.2d 1 (1991). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Mingachos v. CBS, Inc., 196 Conn. 91, 108-09,491 A.2d 368 (1985)
The plaintiff argues that the circumstances surrounding his injury are comparable to the plaintiff in Walsh v. Maclyn, 128 Conn. 412 (1941), who was struck by an errant golf ball, without warning by another golfer. The court in that case concluded that "the duty to the plaintiff which rested upon the defendant while playing this game was the usual one of reasonable care under the circumstances." Id. 414. The court, in Jaworski v.Kiernan, supra, 412-413, stated that its decision did not conflict with the holding in Walsh v. Maclyn, 128 Conn. 412 (1941), as golf is not a "team sport in a true sense nor a sport where contact with other participants is a part of the game." Thus, a different standard of care may be appropriate for golf. The Supreme Court thus, left the question of standard of care for golf, in other factual circumstances, for another day.
The defendant, in addition to citing Jaworski v. Kiernan, 241 Conn. 399,696 A.2d 232 (1997), also relies upon D'Amico v. Tomalski,24 Conn.L.Rptr. 119 (March 5, 1999) (Pellegrino, J.) holding that baseball is a contact sport. "If simple negligence were adopted as the standard of CT Page 7371 care, every punter with whom contact was made, every midfielder high sticked, every basketball player fouled, every batter struck by a pitch and every hockey player tripped would have the ingredients for a lawsuit if injury resulted." Id. 119, citing Jaworski v. Kiernan supra, 410.
The Supreme Court held that "as a matter of policy, is it appropriate to adopt a standard of care imposing on the defendant, a participant in a team contact sport, a legal duty to refrain from reckless or intentional conduct. Proof of mere negligence is insufficient to create liability."Jaworski v. Kiernan, supra, 241 Conn. 412. In so holding, the Supreme Court cited four factors to be considered in determining the extent of the legal duty to be imposed upon the defendant: "(1) the normal expectations of the participants in the sport in which the plaintiff and the defendant were engaged; (2) the public policy encouraging vigorous participation in recreational sporting activities while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." Id., 407.
"In athletic competitions, the object obviously is to win. In games, particularly played by teams and involving some degree of physical contact, it is reasonable to assume that the competitive spirit of the participants will result in some rules violations and injuries." Id., 407. "The normal expectations of participants in contact team sports include the potential for injuries resulting from conduct that violates the rules of the sport." Id., 408.
In applying the Supreme Court's four prong test, this court finds that the plaintiff was a member of the gym class and a participant in the baseball game. He was a member, thus, of one of the baseball teams. The teams were engaged in a contact sport promoting vigorous athletic competition. While the plaintiff's team was at bat and the plaintiff may not have actually been on the playing field, he was a participant in the game. The game was being held as part of a school physical education class which encouraged vigorous recreational activity in sports, under the supervision of school personnel. It is unfortunate that the plaintiff was struck by the plaintiff's bat. Getting hit by the ball, or, as in this case, getting hit by an errant bat, is an inadvertent rules violation from which an injury may result. "The normal expectations of participants in contact team sports include the potential for injuries resulting from conduct that violates the rules of the sport." Id., 408. "While it may seem that there should be a remedy for every wrong, this is an ideal, limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . ." Maloney v. Conroy, 208 Conn. 392,401-402, 545 A.2d 1059 (1988). "The law should not place unreasonable CT Page 7372 burdens on the free and vigorous participation in sports by our youth."Jaworski v. Kiernan, supra, 241 Conn. 409.
The last prong of the Supreme Court's analysis in Jaworski v. Kiernan, supra 408, is to look to the decisions of other jurisdictions. One of the decisions reviewed by the Supreme Court was Crawn v. Campo, 136 N.J. 494,496, 643 A.2d 600 (1994).
In that case, the New Jersey Supreme Court said the "[p]laintiff was playing catcher in a pickup softball game when [the] defendant, attempting to score from second base, either slid or ran into him at home plate." In rejecting the standard, the court stated: "One might well conclude that something is terribly wrong with a society in which the most commonly-accepted aspects of play — a traditional source of a community's conviviality and cohesion — spurs litigation. The heightened recklessness standard recognizes a commonsense distinction between excessively harmful conduct and the more routine rough-and-tumble of sports that should occur freely on the playing fields and should not be second-guessed in courtrooms." Id., 508; Jaworski v. Kiernan, supra,241 Conn. 411.
The plaintiff has argued that the circumstances surrounding his injury are similar to the errant golf ball injury sustained by the plaintiff inWalsh v. Maclyn, 128 Conn. 412 (1941). In Jaworski v. Kiernan, supra,241 Conn. 412, the Supreme Court, as discussed herein, refused to set a standard of care for factual circumstances involving the sport of golf. However, on March 12, 2001, the New Jersey Supreme Court extended the standard of care of recklessness or intentional conduct to golf, citing its prior decision in Crawn v. Campo, supra, 136 N.J. 494, 496, when it decided the matter of Schick v. Ferolito, ___ N.J. ___ No. A-108-99, September Term (1999). In that matter, a golfer was struck by a golf ball due to an errant shot by another golfer without warning. It is noted that the Connecticut Supreme Court also cited Crawn v. Campo, 136 N.J. 494,496 (1994), when reaching its decision in Jaworski v. Kiernan, supra,241 Conn. 399 (1997).
The New Jersey Supreme Court in its ruling dated March 12, 2001, stated: "Shanking the ball is a foreseeable and not uncommon occurrence in the game of golf. The same is true of hooking, slicing, pushing or pulling a golf shot. . . . It is common knowledge, at least among players, that many bad shots must result although every stroke is delivered with the best possible intention and without any negligence whatsoever." Schick v. Ferolito, supra, quoting Benjamin v. Nernberg,102 Pa. Super. 471, 475-76 (1931)
Drawing on the reasoning of Crawn v. Campo, supra, 136 N.J. 494, the New Jersey Supreme Court continued, "[t]he Court perceives no persuasive reason to distinguish between contact and noncontact sports. Risk of CT Page 7373 injury is a common and inherent aspect of athletic effort generally. It may arise from the physical nature of the athletic endeavor, creating the possibility or likelihood of direct physical contact with another player or with a ball. The risk of injury is just as real when it arises from an instrumentality used in a game, such as a swinging golf club or the small hard ball the club propels at a very high rate of speed. Even for an experienced golfer, the course a golf ball takes is often unpredictable through no conscious fault of the golfer." Schick v. Ferolito, ___ N.J. ___ No. A-108-99, September Term (1999) (decided March 12, 2001).
While Connecticut has yet to extend the reckless and intentional conduct standard of care to golf, it has extended this heightened standard of care to contact sports, and baseball is a team contact sport. A baseball bat is no less an instrumentality of the game than a golf club or a golf ball. Proof of mere negligence is insufficient to create liability in the instant matter. Jaworski v. Kiernan, supra,241 Conn. 412.
Accordingly, the defendant's motion to strike the plaintiff's action sounding in one count of negligence and carelessness is hereby granted.
The Court
By Arnold, J.